UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDALLAH ZAYOUR and
Z&A PROPERTY & CONSTRUCTION,
LLC,

        Plaintiffs,                        Civil Action No.
                                                     12-11926

vs.

                                                     HON. MARK A. GOLDSMITH

LIBERTY MUTUAL FIRE
INSURANCE CO.,

        Defendant.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 48)**

## I.    INTRODUCTION

In this insurance coverage action, brought under the Court's diversity jurisdiction, Plaintiffs Abdallah Zayour and Z&A Property & Construction, LLC ("Z&A") assert that Defendant Liberty Mutual Fire Insurance Company breached a fire insurance policy by denying Zayour's claim under the policy. Compl. (Dkt. 1-1). Defendant filed a motion for summary judgment (Dkt. 48), seeking (i) an order that it properly rescinded the insurance policy and denied Zayour's claim due to Zayour's material misrepresentations on the insurance policy application and the proof of loss forms, or, in the alternative, (ii) an order that any damages available to Zayour under the insurance policy are limited to five percent of the covered loss amount. The Court conducted oral argument on April 17, 2014.

For the reasons that follow, the Court concludes that there is a genuine issue of material fact as to whether Zayour made a misrepresentation on the insurance policy application;

furthermore, there is a genuine issue of material fact as to whether Zayour made a misrepresentation on the proof of loss forms with the intent to defraud Defendant. Therefore, Defendant is not entitled to summary judgment on the issues of whether it properly rescinded the policy or properly denied coverage to Zayour. However, the Court further concludes that Defendant is entitled to an order that any damages available to Zayour under the policy are limited by his five percent interest in the subject property, and are thus limited to five percent of the covered loss. Accordingly, the Court will deny in part and grant in part Defendant's motion for summary judgment.

## II. BACKGROUND

Z&A was formed on January 14, 2005 by Zayour, the sole member at that time. Articles of Organization Certificate (Dkt. 48-2); Zayour Dep. at 10 (Dkt. 48-3). On March 21, 2008, Z&A purchased the residential rental property that is the subject of the instant insurance dispute, 6311 Forrer Street, Detroit, Michigan. Deed (Dkt. 48-4). Z&A owned the real property as well as the personal property inside the residence. Zayour Examination under Oath at 13, 40 (Dkt. 48-10).

In 2008, Ali Chouman (not a party to this action) became a member of Z&A. Zayour Dep. at 11. Beginning December 14, 2008, Chouman owned ninety-five percent of the membership interest in Z&A; Zayour owned five percent of the membership interest. Membership Agreement (Dkt. 48-8). Chouman and Zayour still own ninety-five percent and five percent of Z&A, respectively. Zayour Dep. at 8.[1]

---

[1] In his February 27, 2013 affidavit, Zayour claimed that he was, and continues to be, the only owner of Z&A. Zayour Aff. ¶ 2 (Dkt. 50-2). Zayour further stated that he "signed a Membership Agreement with Ali Chouman to only serve as a security interest in the LLC until [he] repaid Ali Chouman." Id. ¶ 19. Zayour stated that the Membership Agreement "was to serve only as a temporary security interest for a loan repayment to Ali Chouman." Id. ¶ 20. However, as discussed infra note 9, the Court concludes that the portions of the affidavit that

On August 7, 2008, Zayour applied for a Dwelling Fire Policy from Defendant.[2] Insurance Application (Dkt. 48-5). In the block for "Named Insured," Zayour listed his own name. Id. Above the signature block, there is a notice in bold-face font stating:

**IMPORTANT – READ BEFORE SIGNING**

**Signing this form does not bind the applicant to complete the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued. If any of the questions appearing above, or on the reserve side hereof shall have been answered falsely or fraudulently, this entire insurance is null and void and all claims there under shall be forfeited.**

Id.

Defendant's agent, Michael Meyer, sold Zayour the insurance policy. Meyer Dep. at 7 (Dkt. 48-6). Zayour first contacted Meyer over the phone, and Meyer subsequently met with Zayour to complete the application. Id. at 15. Meyer typed up the application prior to meeting with Zayour, and at the meeting Meyer checked off answers as he was talking to Zayour. Id. at 15-17. Zayour then signed the application. Id. at 17.

Meyer testified that Zayour stated he owned the subject property, and that Zayour never stated he had a corporation. Id. at 9-10. According to Meyer, because he can only write personal insurance policies, he would not have been able to prepare a policy for the subject property if he had known it was owned by an LLC. Id. at 19. Meyer testified that it is his "operating procedure" to ask who owns a property, and that he would have asked Zayour that question. Id. at 18-19.

Zayour testified that he told Meyer over the phone that he, Zayour, had some houses and

---

contradict Zayour's examination and deposition testimony – that he and Chouman held five percent and ninety-five percent interests, respectively – must be disregarded.

[2] Defendant asserts, and Plaintiffs do not dispute, that the policy at issue in this case was a renewal of a policy originally issued to Zayour and effective from August 7, 2008 to August 7, 2009. See Def. Statement of Material Facts at 3 n.1.

3

needed to be insured. Zayour Dep. at 14. Zayour testified that subsequently, when Meyer met with Zayour to complete the insurance application, Zayour asked Meyer why the policy was under his name "because the property is under company name." Id. at 16-17. Zayour stated that he told Meyer the application needed to be under Z&A's name, but Meyer told him it did not matter whose name was on the application. Id. at 19-20. Zayour reviewed the application, aware that he was listed as the named insured, and signed the application. Id. at 20. Zayour testified that, when he signed the application, he knew that the LLC owned the subject property, and that he did not. Id. at 23. Further, in his affidavit, Zayour stated that he told Meyer three times that the property was owned by an LLC; Zayour also recited that he was not aware that Meyer was not permitted to sell commercial lines of insurance. Zayour Aff. ¶¶ 10, 11. Defendant issued Zayour a fire insurance policy effective August 7, 2009 to August 7, 2010. Policy (Dkt. 48-7).

On July 12, 2010, the Forrer Street property sustained fire damage. Proof of Loss Form (Dkt. 48-14). On the initial proof of loss form, dated August 2, 2010, Zayour listed himself as the owner of the subject property and noted that no other parties had an interest in the property. Id. Zayour subsequently submitted an amended proof of loss form, dated on or about August 31, 2010, in which he continued to list himself as the owner, but also noted that Z&A had an interest in the property. Amended Proof of Loss Form (Dkt. 48-15).

Zayour filed a claim with Defendant under the fire insurance policy on August 2, 2010 (Dkt. 48-14). An appraisal award was entered in February 2011, setting amounts for replacement cost value and actual cash value. Appraisal Award (Dkt. 51-2). The appraisal award states that it "is subject to all policy provisions [and] policy conditions . . . ." Id.

On May 13, 2011, Defendant notified Zayour that the insurance policy was rescinded on the ground that there was a material misrepresentation in the application for insurance:

"Abdallah Zayour does not solely own the dwellings listed for the above-referenced policies. They are owned by Z&A Construction, LLC. As such, the dwellings insured under the above-referenced policies do not meet the eligibility requirements for a Dwelling Fire insurance policy." Rescission Letter (Dkt. 48-12). That same day, Defendant also notified Zayour that his claim was denied. 5/13/11 Denial Letter (Dkt. 48-13).

Elaine Martino, a representative of Defendant, testified that the policy was rescinded and Zayour's policy fee refunded because "the properties were owned by an LLC, and properties that are owned by an LLC do not meet our eligibility requirements for a dwelling fire policy. Had we known the properties were owned by an LLC, we would not have written the policies on these particular contracts, for individual policyholders." Martino Dep. at 25 (Dkt. 48-11). Martino further testified that the underwriting rules are different for personal policies as opposed to commercial policies. Id. at 9-10 (Dkt. 51-3).

### III. LEGAL STANDARD

Summary judgment should be granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." . . . The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations and formatting

omitted).

## IV. ANALYSIS

Defendant raises three arguments in support of its motion: (i) Defendant properly rescinded the policy because Zayour made a material misrepresentation on the insurance application by listing himself as "Named Insured"; (ii) Defendant properly denied the claim because Zayour made a material misrepresentation on the proof of loss forms by listing himself as the owner of the subject property; and (iii) in the alternative, Zayour's damages under the policy are limited to five percent of any covered loss. The Court addresses each argument in turn.

### A. There is a Genuine Issue of Fact Whether Zayour Made a Misrepresentation on the Insurance Application by Listing Himself as the "Named Insured."

Defendant argues that Zayour made a material misrepresentation on the insurance application by listing himself as the named insured. Def. Br. at 9 (Dkt. 48). Defendant argues that both Meyer and Zayour understood that "Named Insured" meant the owner of the property, and Zayour is not the owner. Id. at 9-10. Defendant further contends that it relied on the representation that the subject property was owned by Zayour, and that the misrepresentation was material because Defendant would not have issued the policy if it had known the property was owned by an LLC. Id. at 9. Defendant argues that, therefore, it was entitled to rescind the policy. Id. at 11, 14; Def. Reply at 1 (Dkt. 51).

Plaintiffs respond that Defendant is not entitled to summary judgment because it cannot show that there was a misrepresentation, that the misrepresentation was intentional, that the misrepresentation was material, or that it relied on the misrepresentation. Pl. Resp. at 6 (Dkt. 50). Plaintiffs argue that Zayour made no written or oral representation that he owned the subject property, and that the application never asks for that information. Id. at 6-7. Plaintiffs

assert that the parties' subjective understanding of what the term "Named Insured" means is not dispositive, and that Zayour has an insurable interest in the subject property. Id. at 7-8. Plaintiffs contend that it is unlikely "Named Insured" means the legal title holder, and that the ambiguity in this phrase should be construed against the insurer. Id. at 8.

In light of the parties' arguments, the Court turns to governing law.[3] The Michigan Supreme Court has held that "insurance policies are subject to the same contract construction principles that apply to any other species of contract." Rory v. Continental Ins. Co., 703 N.W.2d 23, 26 (Mich. 2005). See also Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431, 433 (Mich. 1992) ("An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." (citations omitted)). The Michigan Court of Appeals has explained:

> The rules of contract interpretation apply to the interpretation of insurance contracts. The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. When the policy language is clear, a court must enforce the specific language of the contract. However, if an ambiguity exists, it should be construed against the insurer. An insurance contract is ambiguous if its provisions are subject to more than one meaning. An insurance contract is not ambiguous merely because a term is not defined in the contract. Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries.

McGrath v. Allstate Ins. Co., 802 N.W.2d 619, 621-622 (Mich. App. 2010) (citations omitted).

Furthermore, in Michigan, "[i]t is the well-settled law . . . that where an insured makes a material misrepresentation in the application for insurance . . . the insurer is entitled to rescind the policy and declare it void ab initio." Lake States Ins. Co. v. Wilson, 586 N.W.2d 113, 115

---

[3] In this diversity action, it is undisputed that Michigan law governs. See, e.g., Yarnell v. Transam. Life Ins. Co., 447 F. App'x 664, 669 (6th Cir. 2011) ("When federal courts have jurisdiction over state law claims due to the diversity of the parties, the substantive law of the forum state governs." (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

(Mich. Ct. App. 1998) (citation omitted). "[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.'" Oade v. Jackson Nat. Life Ins. Co. of Mich., 632 N.W.2d 126, 131 (Mich. 2001) (citation omitted). Although Plaintiffs assert that Defendant must show any misrepresentation was intentional, Pl. Resp. at 9, Michigan law is to the contrary: "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." Lake States, 586 N.W.2d at 115. "Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." Id. (citation omitted).

Therefore, for Defendant to demonstrate that it is entitled to summary judgment and a declaration that rescission was proper due to a material misrepresentation, it must show (i) that Plaintiff made a misrepresentation on the insurance application, (ii) that the misrepresentation was material, and (iii) that Defendant relied on the misrepresentation. For the reasons that follow, the Court concludes that there is a genuine issue of fact whether there was a misrepresentation on the insurance application.

Here, there is a genuine issue of fact whether the "Named Insured" block required the insurance applicant to list the owner of the property. The ordinary sense of the term "Named Insured" is that it identifies the party who is to be paid the insurance proceeds. See Black's Law Dictionary (9th ed. 2009) (defining "named insured" as "[a] person designated in an insurance policy as the one covered by the policy"). See also 3 Couch, Insurance § 40:1 (3d ed. 2014) (defining "insured" as "the person or entity that will receive a certain sum upon the happening of specified contingency or event"); id. § 40:3 (noting that the "insured may be named within the

policy or may be identified by description"). Thus "Named Insured" does not necessarily equate with the party who owns the property.

Further, the law recognizes that persons or entities without an ownership interest may purchase insurance because insurance law requires only that an insured have an "insurable interest." See Crossman v. Am. Ins. Co. of Newark, NJ, 164 N.W. 428, 429 (Mich. 1917) ("An insurable interest does not, of necessity, depend upon ownership of the property . . . . If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance."). Because a non-owner may insure property, it follows that the "Named Insured" on the application does not necessarily constitute a representation as to who owns the property.

Defendant argues that both it and Zayour understood the "Named Insured" section to mean the owner of the property. However, the evidence cited by Defendant does not unambiguously reflect any such understanding. It is true that Zayour acknowledged in his deposition and affidavit that, when Meyer presented him with the application, Zayour questioned why the policy was in his name. Zayour Dep. at 17-18; Zayour Aff. ¶¶ 13-14. But that does not necessarily mean that Zayour acknowledged that the term "Named Insured" meant the owner of the property. It is arguable that Zayour's comment only reflected his preference that his company be the named insured, but that after Meyer assured him that it was irrelevant whose name was inserted as the insured, he had no objection to listing himself as the insured, in accordance with the manner in which Meyer had prepared the insurance application.

Based on the plain language of the insurance application, there is at least a genuine issue of fact whether the insured party may be a party other than the property owner; accordingly, there is a genuine issue of fact whether Zayour made a misrepresentation by listing himself as the

"Named Insured."[4]  Summary judgment may not be awarded to Defendant on this basis.[5]

**B. Although Defendant Has Shown That Zayour Made a Misrepresentation in the Proof of Loss and Amended Proof of Loss Forms by Listing Himself as the Owner of the Subject Property, There is a Genuine Issue of Fact Whether Such Misrepresentation was Made with the Intent to Defraud.**

Defendant argues that Zayour breached the fraud-or-concealment provision of the insurance policy contract by stating that he owned the subject property on the proof of loss forms.  Def. Br. at 17-19.  Plaintiffs argue in response that Zayour did not breach the fraud-or-concealment provision because in the common sense meaning of the term "owner," Zayour is the owner of the subject property, as he listed on the proof of loss.  Pl. Resp. at 12.  Defendant replies that Z&A owned the subject property, not Zayour, and therefore Plaintiffs' argument is without merit.  Def. Reply at 5.

The fraud-or-concealment clause of the insurance policy states: "We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."  Policy at 17 of 22.  The elements that an insurer must satisfy to prevail under this provision are set out in Mina v. General Star Indemnity Company, 555 N.W.2d 1, 5 (Mich. Ct. App. Sept. 10, 1996) (rev'd in part on other grounds by 568 N.W.2d 80 (Mich. 1997):

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any

---

[4] Defendant's reliance on Montgomery v. Fidelity & Guaranty Life Insurance Company, 713 N.W.2d 801, 804-805 (Mich. Ct. App. 2005), is misplaced.  In Montgomery, the court held that the insured had misrepresented his smoking habit by denying he was a smoker in his life insurance application.  But Montgomery is distinguishable, because the applicant's smoking habit was an express misrepresentation of fact.  By contrast, Zayour plausibly argues that he did not make a factual assertion at all; he simply listed his name as the "Named Insured."

[5] Because there is a genuine issue of material fact whether any misrepresentation was made, the Court need not reach the materiality or reliance elements of the analysis.

>knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it.

Id. (citations omitted).

Furthermore, the insured must show that the insured acted with an intent to defraud:

>The insurer's defense of "false swearing" is an allegation that the insured submitted fraudulent proof of loss. Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured. It may consist of knowingly and intentionally stating upon oath what is not true, or stating a fact to be true although the declarant does not know if it is true and has no grounds to believe that it is true. <u>In order to prevail, the insurer must prove not only that the swearing was false, but also that it was done knowingly, wilfully, and with intent to defraud.</u> Fraud cannot be established from the mere fact that the loss was less than was claimed in the preliminary proofs furnished to the insurer.

Id. (emphasis added). Case law makes clear that the evidence must show that the insured "actually intended" to defraud the insurer, West v. Farm Bureau Mut. Ins. Co. of Mich., 259 N.W.2d 556, 557 (Mich. 1977) — which is ordinarily a question of fact for the jury to decide. Id. See also Welch's Steak & Ribs, Inc. v. North Pointe Ins. Co., No. 310697, 2014 WL 2154977, at **4-5 (Mich. Ct. App. May 22, 2014) (reversing grant of motion for judgment notwithstanding the verdict to insured where there was evidence from which jury could infer insured's intent to defraud); Haley v. Farm Bur. Ins. Co., No. 302158, 2013 WL 4525924, at **2-3 (Mich. Ct. App. Aug. 27, 2013) (affirming denial of summary disposition where contradictory statements by insured created issue of fact whether false statements were made with intent to defraud).

On this summary judgment record, Defendant has not satisfied all of the requirements for a false swearing defense. While Zayour did misrepresent his ownership interest, there is a factual question whether he did so with the intent to defraud.

The Court does agree with Defendant that Zayour misrepresented himself as the owner of

11

the property on the proof of loss forms, because he stated several times under oath that Z&A owned the property, and that he did not. See, e.g., Zayour Dep. at 23 ("Q: And when you signed the application, you knew that the LLC and not yourself individually owned the Forrer Street property, correct? A: Yes."); see also Examination Under Oath at 13, 40. Unquestionably, Z&A did own the property. See Property Deed (Dkt. 48-4) (indicating that the subject property was conveyed to Z&A).

Therefore, Zayour's representations on both the proof of loss and amended proof of loss forms that he was the owner of the property are plainly inconsistent with the record evidence. Further, any claim now by Zayour — after a summary judgment motion has been filed — that he was, in a "common sense" way, an "owner" of the property is untenable. See Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997) (concluding that a party may not "create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony" (citation omitted)); Shabazz v. Safe Horizons, No. 10-12066, 2011 WL 4072157, at *3 n.1 (E.D. Mich. Sept. 13, 2011) (noting that the plaintiff's statements at oral argument contradicted her deposition testimony, and concluding that the plaintiff "cannot create a genuine issue of fact by making statements after a motion for summary judgment has been filed that contradict her earlier deposition testimony").

However, Defendant has not demonstrated an absence of genuinely disputed fact whether Zayour made the misrepresentation with the intent to defraud Defendant. In fact, in its briefs, Defendant raises no argument whatsoever as to the intent element, and Defendant has pointed to no evidence of any intent on Zayour's part. Because Defendant has "the initial responsibility of informing [the Court] of the basis for its motion, and identifying those portions of [the record]

12

which it believes demonstrate the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), Defendant's failure to raise any arguments as to the intent element renders summary judgment inappropriate on this issue.

Furthermore, there is at least some evidence in the record that would weigh against finding that Zayour intended to defraud Defendant. Specifically, in his examination under oath, Zayour told the examiner that he was a five percent owner of the property; he later clarified that he was a five percent owner of Z&A, which owned the property. Zayour Examination Under Oath at 12-13. Zayour also filed an amended proof of loss form less than a month after filing the initial proof of loss, which stated that Z&A had an interest in the property. The fact that Zayour informed Defendant's agents about Z&A's ownership status and interest in the property during the claim investigation creates an issue of fact as to whether Zayour intended to defraud Defendant. See, e.g., Smith v. Farm Bureau Ins. Co., No. 281034, 2009 WL 563727, at *2 (Mich. Ct. App. Mar. 5, 2009) (concluding that the insured's acknowledgement during examination after fire loss that some items on inventory accompanying proof of loss were not her property created question of fact regarding intent to defraud).

Because Defendant has not shown that there is no genuine issue of fact as to whether Zayour misrepresented a fact on the proof of loss forms with the intent to defraud Defendant, summary judgment may not be awarded to Defendant on the ground that Zayour breached the fraud-or-concealment provision of the insurance policy.

**C. Zayour's Coverage is Limited by His Five Percent Ownership Interest in the Subject Property, and, Accordingly, Any Damages Available to Zayour Under the Policy are Limited to Five Percent of the Covered Loss.**

Defendant argues that, if Zayour is entitled to coverage, any damages available to Zayour under the Policy are limited by his five percent ownership interest in Z&A, and thus are limited

13

to five percent of any covered loss. Def. Br. at 20-21.[6] The Court agrees.

The policy at issue here provides: "Even if more than one person has an insurable interest in the property covered, we shall not be liable . . . for an amount greater than the interest of a person insured under this policy . . . ." Policy at 17 of 22. This language unambiguously limits coverage to "the interest of a person insured." Therefore, any coverage in this matter would be limited to Zayour's interest in the property "as of the date of loss." See Certain Underwriters of Lloyds, London v. United States Indus. Servs., 825 F. Supp. 2d 882, 889 (E.D. Mich. 2011) (noting insurable interest is determined as of the date of loss).

As of the date of the loss, Zayour had only a five percent stake in the subject property, because he had a five percent interest in the LLC that was the legal title holder of the property. See 3 Couch, Insurance § 42:10 (3d ed. 2014) (noting that a stockholder is generally considered to have "an insurable interest in the preservation of the corporate property to the extent of his or her interest: the actual loss that he or she might sustain by the injury or destruction of the property" (footnote omitted)); Insurable Interest of Stockholder in Corporation's Property, 39 A.L.R.2d 723 § 3 ("Since an insurance policy is a contract of strict indemnity rather than a wagering or profit-making device, recovery is usually limited to the stockholder's actual interest in the insured property," citing cases in which the stockholder recovered the percentage of the value of the company's property equivalent to the percentage of the stockholder's proportionate

---

[6] In its brief, Defendant asserts, "it is not certain that Zayour has an insurable interest in the Forrer Street property because it is unclear that he gained any benefit from the existence of the property . . . . However, even assuming that Zayour did have an insurable interest . . ., that interest was limited to his ownership interest in Z&A, which at the time of the loss . . . was five percent. Accordingly, pursuant to the Liberty Mutual Policy and applicable law, at most, Liberty Mutual is liable for five percent of any covered loss." Def. Br. at 21. Defendant's statement that it is "unclear" whether Zayour gained any benefit from the property is never developed or supported, either factually or with legal authorities. Therefore, the Court does not address it. See Rivet v. State Farm Mut. Auto Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped").

14

interest in the company). Therefore, Zayour may not recover more than five percent of the policy amount.

The parties have cited no cases discussing the appropriateness of enforcing a provision, similar to the one found in the policy at issue, which limits recovery on a policy to the insured's insurable interest. But Michigan law generally requires courts to enforce insurance policies in accordance with their terms. See McGrath, 802 N.W.2d at 621-622 ("When the policy language is clear, a court must enforce the specific language of the contract." (citation omitted)). Plaintiffs present no cogent argument or authority for departing from this basic principle here.[7]

The Court rejects Plaintiffs' argument that the appraisal process undertaken by the parties overrides the limits imposed by the policy's express language limiting recovery to the insured's insurable interest. Plaintiffs contend that under the policy, the amount agreed upon during the appraisal process shall be the amount of loss. Pl. Resp. at 13. Plaintiffs further argue that Defendant is equitably estopped from "deny[ing] the existence of the appraisal award" because, by engaging in the appraisal process, Defendant represented to Plaintiffs that it would pay the amount agreed upon by the appraisers. Id. at 15.

The Court disagrees. The policy provides: "If you and we fail to agree on the amount of

---

[7] Moreover, allowing Zayour to recover fully on a policy where he only has a five percent interest would undermine the purpose of requiring an insured to have an insurable interest as an essential prerequisite to purchasing insurance. "Michigan law prohibits recovery on an insurance contract unless the beneficiary has an insurable interest in the subject of the policy." VanReken v. Allstate Ins. Co., 388 N.W.2d 287, 290 (Mich. Ct. App. 1986) (citations omitted). The insurable interest requirement arises out of "the venerable public policy against 'wager policies,' which . . . are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment." Morrison v. Secura Ins., 781 N.W.2d 151, 152 (Mich. Ct. App. 2009) (footnote and citations omitted). "Policies of insurance founded upon mere hope and expectation and without some interest in the property, or the life insured, are objectionable as a species of gambling, and so have been called wagering policies." VanReken, 388 N.W.2d at 291 (citation omitted). Allowing Zayour to recover the full value of the property, when he had only a five percent pecuniary interest in the value of the property, would be tantamount to sanctioning recovery on a wager policy.

loss, either can demand that the amount of loss be set by appraisal. . . . If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss." Policy at 19 of 22. However, the appraisal process — which determines the amount of loss — is different from the coverage determination, which assesses whether, and to what extent, the insured is entitled to recover the amount of loss. See Monteleone v. Auto Club Memberselect Ins. Co., No. 13-12716, 2014 WL 1652219, at *5 (E.D. Mich. Apr. 23, 2014) ("'Scope of coverage' is not a matter for appraisal, and the law is well settled that 'the issue of an insurance policy's coverage is for the court to decide, not the appraisers.'" (quoting Angott v. Chubb Group of Ins. Cos., 717 N.W.2d 341 (Mich. Ct. App. 2006)). Accordingly, contrary to Plaintiffs' arguments, an appraisal award — or the decision to engage in the appraisal process — makes no representations as to coverage. Furthermore, the appraisal award in this matter provides that it "is subject to all policy provisions [and] policy conditions." (Dkt. 51-2). Therefore, the appraisal award is subject to the provision in the policy limiting any recovery to an insured's insurable interest. For these reasons, Plaintiffs' arguments regarding the appraisal award and equitable estoppel lack merit.[8]

Accordingly, the Court grants Defendant's request for an order providing that any damages available to Zayour under the Policy are limited by his five percent insurable interest in the subject property, and are thus limited to five percent of the covered loss amount.[9]

---

[8] Plaintiffs also argue that Defendant collected premiums based on the full value of the subject property. Pl. Resp. at 14. However, Plaintiffs do not explain why the policy language expressly limiting recovery to the insurable interest of the insured should be ignored.

[9] Plaintiffs also argue that the legal effect of the Membership Agreement establishing his five percent interest "is not absolute." Pl. Resp. at 14. Plaintiffs seem to contend that there is a dispute as to whether Ali Chouman had an ownership interest in the property. Id. The Court rejects this argument. The Membership Agreement (Dkt. 48-8) unambiguously provides, "Ali Chouman owns 95% of the membership interest and Abdallah Zayour owns 5% of the membership interest in Z&A . . . ." In addition, Zayour testified that Chouman owns ninety-five

V. CONCLUSION

For the reasons stated above, the Court denies in part and grants in part Defendant's motion for summary judgment.

SO ORDERED.

Dated: July 22, 2014          s/Mark A. Goldsmith
    Flint, Michigan         MARK A. GOLDSMITH
                                                 United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 22, 2014.

                                           s/Deborah J. Goltz
                                           DEBORAH J. GOLTZ
                                           Case Manager

---

percent of Z&A and he, Zayour, owns five percent of Z&A. Zayour Dep. at 8. Further, in Zayour's March 9, 2011 examination under oath, he stated that he owned five percent of the subject property and Ali Chouman owned the remaining ninety-five percent. Examination Under Oath at 12 (Dkt. 48-10).

Plaintiffs submitted an affidavit of Zayour, dated February 27, 2013, stating, "I was and am the sole owner of Z&A . . . . I signed a membership agreement with Ali Chouman to only serve as a security interest in the LLC. until I repaid Ali Chouman, Zayour Aff. ¶¶ 2, 19 (Dkt. 50-2). However, a party may not "create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." Penny, 128 F.3d at 415 (citation omitted). The initial motion for summary judgment (Dkt. 20) in this case was filed on January 18, 2013; Zayour's affidavit was prepared and filed after Defendant sought summary judgment. Because the affidavit is inconsistent with Zayour's previous testimony during the examination under oath, as well as the plain terms of the Membership Agreement and Zayour's subsequent deposition testimony, the Court concludes that the affidavit does not create a genuine issue of material fact regarding the ownership of the subject property.

17